P. S. THORSEN & CO., INC., PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11166, 11167, 34280.   Promulgated April 9, 1929.

*Dean Hill Stanley, Esq.*, and *Alfred C. Frodel, Esq.*, for the petitioner.

*W. F. Gibbs, Esq.*, and *O. W. Swecker, Esq.*, for the respondent.

VAN FOSSAN: The only issue pressed at the hearing in these cases arises from the disallowance by respondent of certain large items of deductions styled by petitioner "contract expenses." The appellation is a misnomer and gives no indication of the true character of the expenditures, which were made under the following circumstances.

Petitioner was a one-man corporation, solely and completely dominated by P. S. Thorsen, its president and the owner of from 82 per cent to 88 per cent of its stock. During the taxable years involved the company enjoyed approximately 98 per cent of the ship-insulation business at the Port of New York. Much of this work was rush work in which it was necessary to assemble labor quickly and get expedited action at whatever cost. To accomplish these ends Thorsen, as president of petitioner, followed a practice of drawing large sums of money from the company treasury to spend as he saw fit in carrying out the company business. These sums were drawn by him without any explanation of purpose or relation to specific expenditures and varied in amount from approximately $18,000 in 1923 to $57,000 in 1919.

Thorsen spent these funds at his own discretion for payments to labor delegates, bonuses to truck drivers, commissions to ships' officers, traveling expenses, and other similar purposes, and made no record of such expenditures or accounting to the corporation therefor. The company's books show only the amounts of the several checks drawn to Thorsen's order and contain no record of the amount, nature, or purpose of final expenditures. Thorsen kept no books of any kind and made no record of what he spent or to whom it was paid. Asked to indicate how the money claimed to have been spent for labor was spent and the amount thereof in any year, Thorsen replied, "It can't be done." Similar replies greeted inquiries as to specific amounts spent for any other items. Thorsen frankly admits that he is utterly unable to specify the amount of any item for any year; that there are no records to which resort may be had and that his approximations as to the amounts spent in any year for any particular item might vary largely (as much as $2,000) if he were asked a second time.

The entire case is predicated on Thorsen's reiterated statement that all of the money advanced to him in the several years, admitted to amount to a sum in excess of $200,000, was spent "in the business of the company." As to what constituted the company's business, he testified, "When I am in New York I am on business all of the time. If I leave my house in the morning that is business from then until

I get back, and I usually work about fourteen hours a day." He stated, further, that he has spent as much as $5,000 in a single day in the manner outlined, as to which "I make no accounting. When I need more money I go to the bookkeeper and say, 'Draw a check for so much and give it to me.' That is all there is to it." Asked how he segregated his daily personal expenses from the cash carried in his pocket which was available for use in the company's interests, he replied, "I never did." He did not carry "two separate pocketsful of money."

Thorsen also supplied from his drawings large sums of money to his foreman and other trusted employees to use in the manner outlined as to himself, and he never demanded an accounting as to how this money was spent. The sum in the foreman's hands daily varied from one hundred to several hundred dollars. The testimony of the foreman as to specific expenditures is equally as vague as is Thorsen's.

On a record of which the quoted excerpts are typical and might be multiplied, if necessary, we are asked to find that the sums so expended, aggregating more than $200,000, were ordinary and necessary expenses of the corporation, including reasonable allowances for salaries and other compensation for personal services actually rendered.

The Lord Chancellor of England, in the old case of *Wing* v. *Underwood*, observed: "We may guess, imagine or fancy, but the law of England requires evidence." His animadversion is apt in the instant case. The record is replete with admissions of inability to indicate the amount of any specific expenditure. Though petitioner purports to approximate certain amounts, the approximations are shown to be so uncertain as to amount to nothing but an estimate or a guess. A recollection so deficient as to the expenditure of such large sums of money can scarcely be trusted to make reasonably accurate approximations. In fact, the only precise approximations submitted were a sort of "fair average during the several years" and made no pretense of precise application to any one year, or of being specific or aggregate sums spent for any one purpose.

Thus, in sum, we are asked to allow these large deductions as ordinary and necessary expenses solely on the statement that they were made in the company's business. It is so obvious as not to require demonstration or citation of instances that the test proposed is far too broad. Not every expenditure in "the business of the company" is an allowable deduction. Certain expenditures are expressly excluded by law. Others depend on the reasonableness of the amount expended. Many expenditures, proper in one situation, might be improper in the presence of other facts.

Nor is this a case where the returns were prepared from accurate information not now available in evidence. Here, the returns were based on equally vague data without supporting records as to the character and propriety of the ultimate expenditures. There is no controversy over the fact of payment to Thorsen. The payments to him are admitted, but this fact, supported only by his statement that the money was spent in furthering the company's interest, does not establish deductibility. Our concern is to ascertain how Thorsen, the president and representative of the company, spent the money. The cases cited by counsel for the petitioner are not controlling. Undoubtedly, where the issue is so framed that the undisputed testimony establishes the ultimate fact in question, decision should not be influenced by an unsupported or unverified doubt or suspicion. Such is not the case before us. No fraud is charged, the honesty of petitioner's testimony is unchallenged, and it might fairly be assumed that included in the expenditures made by Thorsen and his employees are many items properly deductible as expense if they were capable of ascertainment. Here the ultimate question to be established is the amount, propriety and allowability as tax deductions of specific expenditures. This requires proof, not merely of the fact that an expenditure has been made, but, when challenged, specifically its amount, purpose and character, and, in some instances, the reasonableness thereof. It might go further—where a blanket deduction is sought of a lump sum, admittedly subject to a wide inaccuracy, it may become necessary to negative the possibility that some part of the item has been spent for prohibited or unallowable purposes.

To place the stamp of approval on the practice proposed in this case would, if carried to its logical conclusion, permit corporations to dispense with much of their bookkeeping and would effectively require this Board to abdicate the function and duty imposed by law to determine the allowability of contested expense deductions. It would make the designated corporation officer the supreme arbiter.

We are reluctant to decide this case adversely to petitioner, entertaining as we do the feeling that hidden in the transactions may be many allowable items, but on the record before us, and it is as complete as it is possible to make it in the absence of book records and in dependence on hazy recollections, we have no alternative but to hold that petitioner has failed to prove that respondent erred.

*Judgment will be entered for the respondent.*